■ NANJING USA, INC., Appellant, v SALVATORE LaMONICA, as Chapter 7 Trustee of BLOCK CORPORATION, Debtor, Respondent. [928 NYS2d 506]—

Nanjing and Block Corporation are both in the business of distributing men's and women's clothing to national retailers for sale to the public. In 2008, Block proposed a deal in which Nanjing would replace Block as the vendor for certain retailers for the production and supply of pants. Nanjing agreed to purchase approximately $4 million of Block's existing pants inventory and to assume certain inventory replenishment programs with specified retailers, including Sears.

On or about October 27, 2008, Nanjing and Block entered into a transition and inventory purchase agreement. Block and Nanjing agreed that Block would continue to act as the supplier of the pants until December 31, 2008 (the transition date), and that Nanjing would acquire Block's inventory for an agreed price and take physical possession of that inventory no later than January 5, 2009.

The purchase agreement provided for a due diligence period, whereby, up until November 17, 2008, Nanjing had full access to Block's financial records and inventory for inspection purposes. Nanjing could cancel the parties' agreement "for any reason" up to the last date of the due diligence period, after which time, it was provided that:

"(c) Either party shall also be entitled to cancel any portion of this Agreement thereafter with respect to a Retailer which does not approve the terms of Purchaser's New Program with such Retailer *or Purchaser shall be entitled to cancel this Agreement in its entirety if Sears does not approve the terms of Purchaser's New Program with Sears.*

"(d) In the event the Purchaser cancels this Agreement in its entirety pursuant to this paragraph 4, *the Escrow Agent shall immediately return all sums, if any, held in escrow to Purchaser* and all rights [and] obligations of the parties hereunder shall terminate without any liability of any party to any other party." (Purchase agreement ¶ 4 [c], [d] [emphasis added].)

Paragraph 3 (f) of the purchase agreement provided that Nanjing would deposit $250,000 into escrow simultaneously with the execution of the agreement, and that if Nanjing failed to close on the purchase, Block would be entitled to the $250,000 in escrow "as liquidated damages."

Andrew Tuorto, Nanjing's vice-president, averred that in early December 2008, Nanjing learned that Sears had expressed concerns over several material aspects of Nanjing's new pants program, including the quantities and styles of inventory to be purchased and the pricing, and, in particular, a specific style of putter pants that were a "major component" of the new pants program with Sears, accounting for $300,000 of the inventory to be purchased by Nanjing from Block. Tuorto averred that "[a]s of December 19, 2008, Sears could not provide a definitive answer as to whether or not it would fully accept this major component of the inventory to be purchased."

Tuorto averred that when it became clear that Sears would not approve Nanjing's new pants program by December 31, 2008 and stated that it would not consider such program until a meeting scheduled for January 6, 2009,* Nanjing faced the prospect of breaching the terms of the purchase agreement by not taking over Block's business as of the transition date, and by

---

* On December 28, 2009, Sears representative Dean Ochotnicki allegedly e-mailed Block's vice-president (Rich Fingerhut) and Tuorto, Nanjing's vice-president, to advise that Sears's review of Nanjing's new pants program would not take place until January 6, 2009. The Sears e-mail stated, "We can let you know the outcome after that meeting."

not making the payment due to Block on January 2, 2009. Accordingly, on December 29, 2008, Nanjing requested an extension of the payment date from Block to at least January 12, 2009. Block denied the request, asserting that "there does not appear to be any reason for a delay in closing the agreement." Tuorto averred that when Block refused its good faith attempts to extend the approaching deadlines in order to await a determination by Sears, it had "no choice" but to cancel the purchase agreement.

On December 30, 2008, Nanjing sent written notice of its cancellation of the purchase agreement, pursuant to paragraph 4 of the purchase agreement, and demanded a return of its deposit, stating, "As you know, Sears has not approved Nan[j]ing's New Program for a substantial portion of the subject inventory." Block refused and instead retained Nanjing's escrow deposit.

In January 2009, Nanjing commenced this action against Block seeking damages for breach of contract and a judgment declaring that it had "properly exercised its right to cancel the Purchase Agreement . . . upon Sears's failure to approve . . . Nanjing's New [Pants] Program."

The trustee answered and interposed counterclaims for a declaration that Nanjing was not entitled to a return of its escrow deposit, and that the trustee was entitled to the escrow deposit as liquidated damages on account of Nanjing's breach and repudiation of its obligations under the purchase agreement.

Nanjing moved for summary judgment on its claims and dismissal of Block's counterclaims, arguing that the clear terms of the purchase agreement (i.e., paragraph 4 [c] and [d]) authorized Nanjing to cancel the agreement in its entirety in the event Sears did not approve any part of its new pants program.

The trustee opposed Nanjing's motion, arguing that it was "clear" that Nanjing "[was not] in a position to finance the transaction prior to the Transition Date," and that Nanjing had relied on the Sears e-mail as a pretext to cancel the agreement. The trustee argued, in any event, that Sears had not rejected the new pants program.

In its decision on the motion, the court reasoned that the clear terms of the purchase agreement placed the burden on Nanjing, as vendee, "to negotiate the terms and provisions of the New Program with Sears." The court found that Nanjing had not met its burden "since the fact that Sears held a pants review meeting does not establish that Sears failed to approve its New Program."

The court concluded: "Since Plaintiff offers no proof that

Sears failed to approve its New Program, it had no right to cancel the Purchase Agreement pursuant to ¶ 4. Plaintiff, therefore, is not entitled to the return of its escrow deposit pursuant to that paragraph." The court searched the record and held that Block was entitled to summary judgment on its first counterclaim.

We now reverse. The purchase agreement provided that Nanjing could cancel it in its entirety if Sears did not approve the new pants program. There is no dispute that as of the date Nanjing exercised its contractual right of cancellation pursuant to paragraph 4 (c), Sears had not approved Nanjing's new pants program. Thus, Nanjing properly exercised its right to cancel pursuant to the clear and unambiguous terms of paragraph 4 (c) and is entitled to the return of its escrow deposit of $250,000.

The dispositive issue is not, as the motion court construed, whether Sears "failed to approve" the new pants program, but whether Sears had affirmatively approved Nanjing's program as of the date of the notice of cancellation. The uncontroverted evidence offered by Nanjing clearly demonstrates that Sears had not approved of Nanjing's new pants program by then. No issue of fact is thus presented and plaintiff Nanjing is entitled to summary judgment in its favor.

Because the agreement unambiguously provides that Nanjing was entitled to cancel in the event Sears did not approve of the new pants program, it is unnecessary to consider the intent of the parties. However, our reading of the agreement also comports with commercial logic. There is no provision in the agreement that suggests the parties intended Nanjing to assume the risk of a post-transition date nonapproval by Sears. Even the provision the trustee relies upon (i.e., that Nanjing was to negotiate the terms and provisions of its new pants program with Sears [¶ 1 (e)]), gives no indication that Nanjing was to assume the risk of a closing without a Sears commitment to a new pants program. Sears's acceptance of Nanjing's new pants program was a material term of the agreement. Nanjing had no reason to purchase inventory for a replenishment program if the inventory was not going to be accepted by the retailer for resale.

The relevant cancellation provision explicitly authorized Nanjing to cancel the agreement in its entirety in the event Sears did not approve of the news pants program. Nanjing exercised its right as a result of Sears's inability to provide Nanjing with a definitive answer as to whether or not it would approve of the inventory by the transition date. Nanjing's good faith, reasonable request for an extension to await Sears's deci-

sion was refused by Block. Had Block acceded to the request, the deal might have been salvaged. Having properly exercised its contractual right to cancel the agreement, Nanjing is now entitled to an order directing summary judgment in its favor. Concur—Mazzarelli, J.P., Sweeny, DeGrasse, Richter and Manzanet-Daniels, JJ. **[Prior Case History: 2010 NY Slip Op 31798(U).]**